### MERRILL v. HODGKINS et al.

(Supreme Court, Equity Term, Jefferson County. May, 1911.)

1. LANDLORD AND TENANT (§ 78*) — ASSIGNMENT OF LEASE — RECORDING — "REAL PROPERTY."

A lease 'for 99 years, not assignable except with the written consent of the lessor, is a chattel real and real property, within Real Property Law (Consol. Laws 1909, c. 50) §§ 290, 291, defining the term "real property" as including chattels real, and providing for the recording of conveyances of real property, and an assignee of the lease with the lessor's consent is protected by the recording acts and acquires a valid title as against a prior assignee holding under an unrecorded assignment and of which he had no notice.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 233–243; Dec. Dig. § 78.*

For other definitions, see Words and Phrases, vol. 7, pp. 5939–5951; vol. 8, pp. 7778, 7779.]

2. PLEDGES (§ 44*)—PAYMENT OF DEBT—EFFECT.

A payment of an indebtedness secured by collateral discharges the collateral, and the debtor is entitled thereto.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 103–107; Dec. Dig. § 44.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Samuel L. Merrill against Henry C. Hodgkins and others. Judgment for defendants.

R. W. Merrill and E. C. Emerson, for plaintiff.

A. H. Francis (W. B. Van Allen, of counsel), for defendant Francis.

F. M. Boyer, for defendant Hodgkins.

MERRELL, J. On September 15, 1881, the Round Island Park Association leased to one E. M. Merrill lot No. 165, Dominion and Coast avenues, Round Island Park, in the St. Lawrence river, Jefferson county, N. Y., for the period of 99 years. Under the rules and regulations of the Round Island Park Association, under and subject to which said lease was given and accepted, the same could not be assigned or transferred, except with the written consent of the lessor. Thereafter the said lessee erected a cottage on said lot, and held and enjoyed possession thereof for some years. On or about July 25, 1892, the said E. M. Merrill was indebted unto one Susan A. Manning in the sum of $350, evidenced by three promissory notes. On said last-mentioned date, as collateral security for the payment of said notes, said Merrill, without, however, first having obtained the written consent of said Round Island Park Association, assigned to said Susan A. Manning said lease. This assignment was never recorded in the Jefferson county clerk's office. One month thereafter, on August 25, 1892, said E. M. Merrill, as further collateral security for the payment of the aforesaid notes for $350, executed to said Susan A. Manning a mortgage upon certain village property in Carthage, N. Y. Nearly three years later, and on July 12, 1895, the said mortgaged premises in Carthage were conveyed by said E. M. Merrill to the plaintiff, Samuel L. Merrill, for the expressed consideration of $200. Plaintiff, when he took said conveyance, knew of the mortgage thereon to said Manning. Subsequently he realized on a sale of said Carthage lot $525. Susan A. Manning died March 9, 1895, testate, and thereafter letters testamentary upon her will were issued to the defendant Caroline A. French.

From the time of the conveyance of the Carthage lot to the plaintiff it would appear that he paid the interest on the notes given by E. M. Merrill to Susan A. Manning and then in the hands of her said executrix; said interest being paid by plaintiff until August 27, 1907. On said last-mentioned date plaintiff paid said notes and obtained from said executrix a discharge of said mortgage. The notes were not indorsed to the plaintiff, but appear to have been paid, and the mortgage given to secure them discharged of record. The plaintiff admitted upon the trial that the original indebtedness was then discharged. On the same date when said notes were paid and said collateral mortgage discharged, the said executrix of Susan A. Manning attempted to assign to the plaintiff the lease in question, which she found among the papers of her testatrix, and which the latter held by assignment from E. M. Merrill as collateral security for the payment of the three promissory notes. This assignment from the executrix of Susan A. Manning to the plaintiff was never recorded in the Jefferson county clerk's office, and no consent thereto was obtained from

the Round Island Park Association. It is to foreclose said lease that plaintiff brings this action.

The defendant Hodgkins claims to own said lease by due assignment thereof and all rights of the lessee thereunder, and by way of defense established upon the trial the following facts: On July 18, 1895, in less than a week after he had deeded the Carthage lot to his brother, the plaintiff, the said E. M. Merrill, for value received, and with the written consent of the Round Island Park Association, transferred and assigned to the defendant Alonzo H. Francis his said lease of the lot on Round Island Park. This assignment was under seal, and was duly acknowledged, and was thereafter duly recorded in the Jefferson county clerk's office. On the same day said E. M. Merrill, by an instrument in writing, under seal and duly acknowledged, conveyed to said Francis all his right, title, and interest in the premises covered by said lease. Thereafter and on November 29, 1897, said Francis, who was indebted to the defendant Henry C. Hodgkins in the sum of about $450, and who was being pressed by said Hodgkins for pay, assigned to said Hodgkins all his right, title, and interest in and to said lease and in and to the property described therein. The said instrument stated that the assignment and transfer was given as collateral security for the payment of the balance due the defendant Hodgkins upon the promissory note of said assignor, on which there was due about $450 April 9, 1895, and further stated that said assignment and transfer was to become absolute in case the rents of the cottage on said leased property were not, for the seasons of 1898, 1899, and 1900, applied on said note, and that said assignment should become absolute in any event on the 1st day of September, 1900, if said note was not fully paid.

It must be borne in mind that, at the time said defendant took said assignment of said lease from Francis, the assignment theretofore executed by the said lessee to Susan A. Manning to secure the payment of the notes for $350 was not of record, and that the defendant had no notice or knowledge of any outstanding equities in or claims on the property covered by the lease. Indeed, the first intimation that defendant appears to have had that his right to the lease or the possession of the premises covered thereby was questioned was when, in 1901, some four years after the assignment to him by said Francis, he received a letter from the executrix of Susan A. Manning, deceased, who was a stranger to him, advising him that she claimed to hold an assignment of the lease as security for $350.

As soon as the defendant Hodgkins obtained the assignment of said lease from the defendant Francis, he took possession of the cottage property covered by said lease, paid the taxes thereon, employed an agent to look after the property, rented the same and collected the rentals, and exercised other acts of ownership. He expended from $125 to $150 in betterments to the cottage and boathouse upon the premises. On April 15, 1904, the note held by Hodgkins against Francis, to secure which the former held the assignment of the leasehold estate, not having been paid, the defendant Francis, by an instrument in writing, under seal, duly assigned and conveyed to the defendant Hodgkins all his right, title, and interest in and to the said lease

and all his right, title, and interest in and to the premises therein described. This last-mentioned instrument recited the giving of the assignment of November 29, 1897, and the fact of the failure of said Francis to make the payments therein mentioned and that said payments had never been made, and purported to be an absolute assignment of said leasehold property and all rights and title therein of said defendant Francis. On June 15, 1905, the Round Island Company consented in writing to the assignment of said lease to said defendant Hodgkins. Said last-mentioned assignment from defendant Francis to defendant Hodgkins was thereafter duly recorded in the office of the clerk of the county of Jefferson.

In the answer of the defendant Hodgkins several defenses are urged. It seems to me that it will be only necessary to allude to two of said defenses, either of which precludes any right of action herein on the part of the plaintiff.

[1] First. The defendant Hodgkins is protected by the recording acts, and at the time he took the assignment of the lease in question the prior assignment to Susan A. Manning was not of record, nor was the subsequent assignment from the executrix of Susan A. Manning to the plaintiff of record. It seems undisputed that the defendant Hodgkins, at the time he took his assignment from Francis, was entirely ignorant of any incumbrance, assignment, or outstanding equity or claim against the property in question. By section 290 of the Real Property Law, the lease in question was clearly a chattel real and was real property. The defendant Hodgkins was a purchaser thereof, and the said lease was clearly a conveyance under the statute. By section 291 of the Real Property Law, provision is made for the recording in the office of the clerk of the county where the real property is situated of conveyances of real property, and by said section it is also provided that, where such conveyances are not recorded, they are void as against any subsequent purchaser in good faith and for a valuable consideration, from the same vendor, his heirs or devisees, of the same real property or any portion thereof, whose conveyance is first duly recorded. The defendant Hodgkins, it seems to me, was a purchaser in good faith and for a valuable consideration, within the meaning of the statute. He was none the less a purchaser because he received his title by assignment through Francis. The title of the defendant Hodgkins would appear to be clean, and in no manner has been attacked by the plaintiff; whereas, plaintiff's alleged title is through two assignments, the one from E. M. Merrill to Susan A. Manning, and the other from the executrix of Susan A. Manning to the plaintiff, neither of which assignments was ever recorded, and neither of which appears ever to have been brought to the notice of the defendant Hodgkins until some years subsequent to the execution of the assignments of said leasehold estate to him and of his possession of the premises thereunder.

[2] It is also urged—it seems to me with much force—that the assignment of the lease from E. M. Merrill to Susan A. Manning was as collateral security for the payment of the indebtedness of $350, evidenced by the three promissory notes which she held against the assignor. Subsequently the said Merrill, as additional collateral se-

·curity, gave to her (said Manning) the mortgage upon the Carthage real estate. Thereafter said real estate was sold and conveyed by said E. M. Merrill to the plaintiff; the expressed consideration in the deed being $200. It appears from the evidence that the grantee, the plaintiff, thereafter realized on said sale, which he admitted was made without the actual payment of any money by himself to his brother, the sum of $525. It would look very much as though the plaintiff, at the time he took the deed from E. M. Merrill of said Carthage lot, must have assumed and agreed to pay the Manning notes for $350. Be that as it may, he thereafter did pay the interest upon said notes down to August 27, 1907, when he paid the principal thereof. It is also a fact of some significance that in less than a week after conveying said real estate to the plaintiff the said E. M. Merrill made the assignment of the lease in question to the defendant Francis. It is quite apparent to me that E. M. Merrill then believed that he was free to ·deal with said lease as his own; the claims thereto of Susan A. Manning having been adjusted in the conveyance of the Carthage lot to his brother, the plaintiff.

It is claimed by the defendant Hodgkins that when the plaintiff, on August 27, 1907, paid and discharged the notes, and the mortgage, which was given as collateral security for their payment, was discharged, these acts worked a discharge of the security by way of assignment of the lease in question to Susan A. Manning. The doctrine is too well settled in this state to need citation here that the payment and discharge of a principal indebtedness discharges all collateral security for the payment of such principal indebtedness. The plaintiff admitted upon the trial that when he paid the notes, and the mortgage given as collateral security thereto was discharged, on August 27, 1907, the indebtedness theretofore existing to the estate of Susan A. Manning was satisfied.

It seems to me that upon the two grounds stated the contention of the defendant Hodgkins is just.

Proper motions were made at the close of the plaintiff's case, and renewed at the end of the trial, that the facts established by the plaintiff were not sufficient to constitute a cause of action herein. That motion was held, pending consideration of the case as a whole. It seems to me that the motion must be granted.

Proper findings in accordance with the foregoing memorandum may be submitted.